UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

**FILED**

MAR 1 5 2016

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| CHEVAL INTERNATIONAL and AUGUST K. ANDERSON, | * * * * | CIV. 14-5010 |
| Plaintiffs, | * * | |
| -vs- | * * | MEMORANDUM OPINION AND ORDER ON MOTION |
| SMARTPAK EQUINE, LLC, | * * | FOR SUMMARY JUDGMENT |
| Defendant. | * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiffs, Cheval International and August Anderson, have sued Defendant, Smartpak Equine, LLC for: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) Unfair Competition; (3) False Description under 15 U.S.C. § 1125; and (4) Defamation, Deceptive Trade Practices, Tortious Interference with Business Expectancy, Unfair Competition and Trademark Infringement under South Dakota law.

Defendant has moved for summary judgment on all of Plaintiffs' claims.

## BACKGROUND

**The Parties**

Plaintiff, August Anderson, developed horse supplements including those commonly known as "Black-As-Knight", "Gold-As-Sun", "Red-D-Vinity", and "Inside-Out". "Inside-Out" is a feed supplement that acts as a natural insect repellant. It is marketed as making a horse smell and taste bad to biting insects. Plaintiffs allege that it quickly became known as "Bug-Off". The other three supplements are marketed to improve the look and health of horse coats. Anderson is the owner and manager of Cheval International, a limited partnership created under the laws of South Dakota. Cheval develops, manufactures and sells the equine supplements.

Smartpak is in the same industry as Plaintiffs in that both sell animal and equine supplements. In 1999, Smartpak began purchasing supplements from Plaintiffs and repackaging them into single dose packages for resale. In approximately 2009, Smartpak began manufacturing and selling a product that it named "Smart Bug-Off", meant to repel biting insects by the taste and smell of horses that eat the "Smart Bug-Off" supplement.

Plaintiffs ended their business relationship with Smartpak in June of 2012, but allowed Smarkpak to continue selling their products until Smartpak's supply was exhausted. Smartpak stopped selling the products once it exhausted its supply.

**Trademarks**

Since 1992, Plaintiffs have used the names "Black-As-Knight", "Gold-As-Sun", "Inside-Out" and "Bug-Off" as marks for the purposes of identifying their goods and distinguishing them from other manufacturers. "Red-D-Vinity" was first used in 2004. The "Black-As-Knight" and "Gold-As-Sun" marks were registered on July 23, 2013.

Smartpak's "SmartBug-Off" mark was registered on December 8, 2009.

**Background Relating to Dispute**

Plaintiffs' claims against Smartpak arise from Internet searches of Plaintiffs' marks. After Plaintiffs severed their business relationship with Smartpak, Anderson discovered that Internet searches for "Black-As-Knight", "Gold-As-Sun", and "Red-D-Vinity" resulted in some links that would refer to Smartpak's website and state that the products are no longer available. SmartPak's website would states things such as "black as knight " is no longer available at SmartPak, or, "Sorry, we couldn't find what you were looking for." Anderson claims she has been contacted on multiple occasions by consumers who thought Plaintiffs were out of business or no longer selling these products.

2

In December of 2012, Anderson asked Smartpak to stop making statements on its website and in advertisements on the Internet that Plaintiffs' products were no longer available. Anderson's concerns were set forth in emails to Paal Gisholt at SmartPak. The following is an excerpt from one of those emails, dated December 18, 2012:

> Here is my huge concern - my number one selling product I googled to day: Black As Knight. It appeared that you were the manufacturers of BlackAsKnight. Nontheless, I click on it and I go straight to the page of your's and blackenalls "knockoff" and in red it says "Black As Knight is no longer available, but don't worry you can buy our....
>
> No wonder I've been getting calls from panicking customers asking if we went out of business!

(Doc. 33-1.)

Although Smartpak indicated that it would stop saying the products are no longer available, the company allegedly continued to cause search engine results for Plaintiffs' major products to state that they were no longer available. Dissatisfied with SmartPak's response, Plaintiffs instituted the present lawsuit in by filing the Summons and Complaint on February 24, 2014. Plaintiffs' theory is:

> SmartPak's unauthorized use of Plaintiffs' trademarks has caused and continues to cause actual confusion in the market by luring customers of Plaintiffs' products to SmartPak's website where it informs potential customers that the Plaintiffs' products are no longer available and offers a replacement product.
> SmartPak's unauthorized use of Plaintiffs' trademarks is diverting internet traffic to SmartPak's commercial website, thereby capitalizing on Plaintiffs' goodwill. The diversion of internet traffic has resulted in the loss of customers to Plaintiff, because once consumers arrive at SmartPak's website, consumers are encouraged to purchase SmartPak's products. Consumers are not given the opportunity to purchase Plaintiffs' products which were used to lure the consumers to SmartPak's website because SmartPak no longer sells those products or wrongfully asserts that the product is no longer available.

(Doc. 31, ¶¶ 21 and 22.) Plaintiffs claim they have lost sales from consumers who, because they believed Plaintiffs were no longer selling the products or that Cheval was no longer in business, purchased similar products from other providers, including SmartPak. (*Id.* at ¶ 29.)

3

After receiving an extension of time to file an Answer, on April 18, 2014 SmartPak filed a motion to dismiss Plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.) Plaintiffs objected to SmartPak's motion to dismiss and did not respond to the merits of the motion. (Docs. 17, 18, and 21.) Among other objections, Plaintiffs urged the Court not to take judicial notice of SmartPak's exhibits 3 and 5 through 18 when considering SmartPak's motion to dismiss. In response to these motions, Judge Viken entered an Order on February 25, 2015, converting SmartPak's Motion to Dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56(a). (Doc. 26.) SmartPak filed its Statement of Undisputed Material Facts on March 19, 2015. (Doc. 27.) On April 9, 2015, Plaintiffs, represented by counsel, filed responses to Smartpak's motion and statement of facts. Although Plaintiffs' lawyers addressed the merits of SmartPak's motion in a responsive brief, they noted that Plaintiffs should be allowed to conduct discovery prior to summary judgment. (Doc. 32 at 4.) At the same time, Plaintiffs filed a motion for a continuance and postponement of the summary judgment decision pursuant to Federal Rule of Civil Procedure 56(d). (Doc. 28.) Plaintiffs' counsel asserted that they could not "present facts sufficient to justify their opposition to what is now SmartPak's motion for summary judgment." (Doc. 29 ¶ 3.) Plaintiffs explained that they expected discovery to uncover the following facts and information:

a. SmartPak's extensive use of Plaintiffs' trademarks (Black-As-Knight, Gold-As-Sun, Red-D-Vinity, Inside-Out, and Bug-Off) in print and digital advertisements, on SmartPak's website, in metatags, and in all other forms. Plaintiffs have only sporadically been able to capture instances of infringement by SmartPak. Plaintiffs believe this infringement and deliberate course of unfair competition extends far beyond what Plaintiffs have been able to capture.

b. SmartPak's continued advertisement and use of Plaintiffs' trademarks even after SmartPak stated that it would cease to use Plaintiffs' trademarks in its advertisements and search engine advertisements.

c. SmartPak's statements on its website as to Plaintiffs' products no longer being available.

d. Evidence of actual confusion of customers regarding Plaintiffs' products and SmartPak's products.

4

    e.  Evidence of the diversion of internet traffic to SmartPak' s website through the use of Plaintiffs' trademarks. Based on information and belief, SmartPak has records of the internet traffic to its webpages and can track the number of consumers that visited each particular webpage. Further, based on information and belief, SmartPak has records of the results of its internet advertising campaigns, such as Google AdWords.

    f.  SmartPak's tactics in converting those consumers that visit SmartPak's website looking for Plaintiffs' products to customers of SmartPak.

    g.  Evidence of SmartPak's intentional and willful use of Plaintiffs' trademarks to divert traffic to SmartPak's website.

    h.  Evidence of SmartPak's knowledge of Plaintiffs' trademarks and deliberate use of Plaintiffs' trademarks and confusingly similar names for SmartPak's own products.

    i.  Evidence of SmartPak's false and misleading statements and representations of fact regarding Plaintiffs sale of Plaintiffs' products.

    j.  Evidence regarding the use of "Bug-Off " as the name commonly used to refer to Plaintiffs' insect repellant product.

    k.  Other evidence related to the claims set forth in Plaintiffs' Complaint.

(Doc. 29 at ¶ 5.) The Court ordered the parties to engage in discovery on the matters framed by SmartPak's motion. (Doc. 37.) The scheduling Order included an October 30, 2015 deadline for discovery on the motion for summary judgment. (*Id.*)

        Subsequently, the relationship between Plaintiffs and their lawyers deteriorated. Two motions were filed requesting withdrawal as counsel for Plaintiffs. (Docs. 38 and 43.) On her own, Anderson served multiple sets of discovery requests. SmartPak moved for a protective order and sanctions against Anderson, arguing that she violated the Court's discovery Order and that almost all of the discovery requests were irrelevant. (Docs. 41, 42.) On August 7, 2015, Anderson agreed to withdraw her discovery requests (doc. 46-1), stating that "an infinite amount of time could be wasted arguing whether each and every one of these is within the scope of Summary Judgement Motion and, in the end, not a drop of new information will be provided to Plaintiffs by Defendant."

(Doc. 46-1.) On August 10, 2015, SmartPak withdrew its motion for protective order and sanctions. (Doc. 46).

Thereafter, on August 11, 2015, Anderson and lawyers for SmartPak filed a joint motion, stipulating to the following:

1.      Plaintiffs withdraw their motion for a continuance of SmartPak's motion to dismiss, which was converted to a motion for summary judgment. Dkt. No. 28. Plaintiffs agree that they do not seek any discovery from any person, including SmartPak, before the Court can consider and decide SmartPak's summary judgment motion. The Court's Scheduling Order, Dkt. No. 37, should be vacated.

2.      The parties agree that, if the Court approves this Stipulation, SmartPak shall file and serve any reply to Plaintiffs' response in opposition to the summary judgment motion, within 21 days of the Court's Order.

3.      The parties agree that Cheval International shall engage new attorneys and enter their appearance on behalf of that partnership, within 30 days of the Court's Order on SmartPak's motion for summary judgment.

(Doc. 47.)

On September 1, 2015, Judge Viken issued an Order granting the motion to allow withdrawal of Plaintiffs' lawyers as counsel of record. (Doc. 49.) The Court noted that Anderson is entitled to represent herself pro se, but she may not represent Cheval International because a corporation or partnership must appear in federal court through a licensed attorney. (*Id.*) In accordance with the parties' agreement, the Court vacated its scheduling order which included deadlines for discovery.

On September 22, 2015, SmartPak submitted its reply in support of its motion for summary judgment, including two additional affidavits. The case was reassigned to Judge Lawrence L. Piersol on February 1, 2016.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273-74 (8th Cir. 1988). All facts presented to the district court by the non-moving party are accepted as true if properly supported by the record. *See Beck v. Skon*, 253 F.3d 330, 332–33 (8th Cir. 2001).

The parties' agreement that the Court can consider and decide SmartPak's summary judgment motion without discovery makes it difficult because the complexity of this case justifies full discovery prior to addressing a motion for summary judgment. Instead, the Court's decision is limited to the small number of exhibits that have been presented by the parties, many of which were selected by SmartPak. Although discovery need not be completed before summary judgment, there is a reason the Eighth Circuit has stated that summary judgment is appropriate only when the nonmoving party has had an adequate opportunity to conduct discovery. *See, e.g., Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006). Accordingly, in addressing SmartPak's motion for summary judgment, the Court is mindful that former counsel for Plaintiffs desired discovery prior to a ruling on SmartPak's summary judgment motion, that Anderson, proceeding pro se, unsuccessfully attempted to undertake discovery, that no discovery has been done, that Plaintiffs are unrepresented, and that SmartPak has not yet even answered the Complaint.

7

## DISCUSSION

### Count 1 - Trademark Infringement

In Count 1 of their Complaint, Plaintiffs allege that SmartPak used without their permission the "Black-As-Knight", "Gold-As-Sun", "Red-D-Vinity", "Inside-Out"and "Bug-Off" marks in sales advertisements to divert internet traffic away from Plaintiffs' website and toward Smartpak's commercial website. In order to state a claim for trademark infringement under the Lanham Act, a plaintiff must establish: (1) the validity of its trademark; (2) that infringement occurred; and (3) likelihood of confusion. 15 U.S.C. § 1114; *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999).

SmartPak contends that it is entitled to summary judgment on Plaintiffs' trademark infringement claim for a few reasons. First, SmartPak argues that Plaintiffs' alleged marks "Red-D-Vinity", "Inside-Out"and "Bug-Off" are not federally registered trademarks. Second, SmartPak asserts that it did not "use in commerce" Plaintiffs' marks. Third, SmartPak contends that Plaintiffs have failed to prove a likelihood of consumer confusion arising from such alleged infringement.

Plaintiffs argue that SmartPak used Plaintiffs' actual marks in commerce, causing a likelihood of consumer confusion.

### A. Registered Trademarks

Under the Lanham Act, Plaintiffs' registration of "Black-As-Knight" and "Gold-As-Sun" marks "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate [of registration] ...." 15 U.S.C. § 1057(b). "The presumption created by the Lanham Act is a rebuttable one, which shifts the burden of proof to the one questioning the trademark. The statutory presumption may be overcome by establishing the generic nature of the mark." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984) (internal citations omitted). SmartPak has presented

8

no evidence of the generic nature of "Black-As-Knight" or "Gold-As-Sun". The Court is bound to presume at this summary judgment stage that Plaintiffs' trademarks "Black-As-Knight" and "Gold-As-Sun" are distinctive and worthy of protection under the Act. SmartPak cannot and does not argue that these marks are outside the protection of the Lanham Act.

### B. Unregistered Trademarks

Section 43 of the Lanham Act grants protection to qualifying, unregistered trademarks from infringement and unfair competition. *Everest Capital Ltd. v. Everest Funds Management, L.L.C.*, 393 F.3d 755, 759 (8th Cir. 2005) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992)). Unregistered marks must be distinct in order to qualify for trademark protection. *See Frosty Treats, Inc. v. Sony Computer Entertainment America, Inc.*, 426 F.3d 1001, 1003 (8th Cir. 2005) ("Because none of the marks at issue has been federally registered ... [plaintiff] bears the burden of establishing that its marks are protectible under trademark law."). Marks are classified into one of four categories: 1) arbitrary or fanciful, 2) suggestive, 3) descriptive, or 4) generic. *Cellular Sales, Inc. v. Mackay*, 942 F.2d 483, 485 (8th Cir. 1991).

An arbitrary or fanciful trademark is the strongest type of mark and is afforded the highest level of protection. *Id.* at 486. A generic term is a common name that describes a product, and it is never afforded trademark protection. *See Duluth News-Tribune, a Div. of Nw. Publications, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996) ("Lite Beer" is generic) (citing *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79–81 (7th Cir. 1977). Suggestive and descriptive marks fall somewhere in between arbitrary or fanciful and generic. *Duluth News-Tribune*, 84 F.3d at 1096.

"An arbitrary term is one that has a dictionary meaning—though not describing the product—like IVORY for soap. A fanciful mark is a name that is made-up to identify the trademark owner's product like EXXON for oil products and KODAK for photography products." *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1075-76 (2d Cir. 1993). A suggestive mark requires "imagination, thought, and perception to reach a conclusion as to the nature of the goods."

*Frosty Treats*, 426 F.3d at 1005. A descriptive mark, on the other hand, immediately conveys an "idea of the qualities and characteristics of the goods" and is entitled to protection only if it has become distinctive by acquiring a secondary meaning. *Id.* (internal citation and quotation omitted).

The mark "Red-D-Vinity" is fanciful because it has no meaning independent of Plaintiffs' mark. It is an inherently distinctive mark entitled to the highest protection. In contrast, "Inside-Out" is a generic term not entitled to trademark protection. It is a common word, or a common combination of two words, often found in the dictionary and used by the general public as a common term. SmartPak submitted evidence of Internet searches for "Inside-Out" that returned considerable results having nothing to do with Plaintiffs' products. The searches did not return any links related to any SmartPak or Cheval insect repellant products.

"Bug-Off" also leans toward generic. At most it is a descriptive mark. The product is designed to repel insects. Thus "Bug- Off" conveys the immediate idea of the characteristics of the product. No exercise of the imagination is needed to understand that "Bug-Off" is a product designed to repel bugs. The use of the identical term by other companies to describe insect repellant products support the Court's conclusion that "Bug-Off" is descriptive and not particularly distinctive. "Bug-Off" is entitled to protection only if it has become distinctive by acquiring a secondary meaning.[1] Plaintiffs have failed to prove that "Bug-Off" has secondary meaning in the minds of consumers such that the alleged infringement by SmartPak is likely to cause confusion among consumers as to the source of the product.

Thus SmartPak is entitled to summary judgment on Plaintiffs' federal trademark infringement claim for "Bug-Off" and "Inside-Out" as alleged in Count 1. Summary judgment is denied as to Plaintiffs' infringement claim for the mark "Red-D-Vinity".

---

[1] "Secondary meaning is an association formed in the minds of consumers between the mark and the source or origin of the product." *Frosty Treats*, 426 F.3d at 1005 (quoting *Co–Rect Prods., Inc. v. Marvy! Adver. Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir. 1985)).

10

### B.    Use in Commerce

"[A] mark shall be deemed to be in use in commerce ... on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale...." 15 U.S.C. § 1127. SmartPak argues that it has not used Plaintiffs' marks because Plaintiffs have no actual evidence of use of the marks to advertise or sell Cheval's products after SmartPak's supply was exhausted. SmartPak denies purchasing keywords that include Plaintiffs' trademarks, other than the keyword "bug off" which it purchased in order to promote its SmartBug-Off product that received a registered trademark in 2009. SmartPak cites *DaimlerChrysler AG v. Bloom*, 315 F.3d 932 (8th Cir. 2003), where the Eighth Circuit found the defendant did not actually use the mark because it did not register the mark, advertise the mark, or incorporate the mark into a web page.

This case is distinguishable from *DaimlerChrysler* because Plaintiffs' marks are visually displayed at SmartPak's website when the Internet user types in the marks as search terms. Thus at the very least a question of material fact exists as to whether or not SmartPak used Plaintiffs' trademarks in commerce at any time without Plaintiffs' permission. *Cf. Brookfield Commc'ns., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) (finding use of mark in unseen Internet metatags on defendant's web site to be a use in commerce); *J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*, 2007 WL 30115, *5–6 (E.D. Pa. Jan. 4, 2007) (finding that use of trademark in sponsored links is use under the Lanham Act).

The exception is for "Inside-Out." Plaintiffs have not submitted any facts to support a finding that SmartPak uses the term "Inside Out" on its website to advertise its insect repellant supplement. Although the term "inside out" is found on SmartPak's website, it is not used in a way that would divert consumers away from any of Plaintiffs' products. Thus SmartPak is entitled to summary judgment on Plaintiffs' federal trademark infringement claim for "Inside-Out" as alleged in Count 1 for this additional reason.

11

### C.     Likelihood of Consumer Confusion

Mark infringement requires proof that the plaintiff has ownership or rights in the mark and that the defendant has used the mark in commerce, in connection with goods or services, in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011). Accordingly, in order to defeat summary judgment, Plaintiffs must prove that questions of material fact exist as to whether SmartPak's use of Plaintiffs' trademarks "Black-As-Knight", "Gold-As-Sun", and "Red-D-Vinity" on the Internet or on its website created a likelihood of confusion among consumers as to the source or sponsorship of the products.

#### 1. Initial Interest Confusion

In their Complaint, Plaintiffs invoke the doctrine of initial interest confusion. Under the initial interest confusion doctrine, the Lanham Act prohibits a competitor from luring potential customers away from a producer by initially passing off its goods or services as those of the producer's even if confusion as to the source is dispelled by the time any sales are completed. *See McCarthy on Trademarks* § 23:6. Some courts have characterized this initial interest confusion as a type of "bait and switch" tactic whereby the infringer impermissibly trades on the good will of the plaintiff's mark. *See id.* A majority of the circuits have adopted the initial interest doctrine. *See id.* at n.2 (collecting cases). In *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754 (8th Cir. 2010), the Eighth Circuit neither adopted nor rejected the doctrine. *Sensient* involved flavor delivery systems that are sold to sophisticated consumers after a collaborative process. *Id.* at 766, 769. The Court "decline[d] [plaintiff's] invitation to adopt the 'initial interest confusion' doctrine" in that case, explaining that "even if the doctrine applied generally in this circuit, it would not apply" where, "although the products are similar, ... the customers are sophisticated and exercise a relatively high degree of care in making their purchasing decisions." *Id.* at 766. It is possible that the initial interest confusion doctrine would apply to the present case.

Because the Eighth Circuit has not adopted the doctrine, it is not clear what factors are most relevant for determining customer confusion. But it is instructive that the Eighth Circuit in *Sensient*

12

decided that the initial interest doctrine did not apply after focusing on the similarity of the parties' goods and the level of care exercised by the relevant consumers. Other courts have also focused on these two factors in determining whether the defendant has used the plaintiff's mark in such a way as to cause initial interest confusion. *See, e.g., Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 945 (9th Cir. 2002) ("actionable initial interest confusion on the Internet is determined, in large part, by the relatedness of the goods offered and the level of care exercised by the consumer"); *Checkpoint Sys., Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 296–297 (3d Cir. 2001). These factors are important because "[w]hen products are similar, a firm is more likely to benefit from the goodwill of a firm with an established mark. And when consumers do not exercise a high level of care in making their decisions, it is more likely that their initial confusion will result in a benefit to the alleged infringer from the use of the goodwill of the other firm." *Checkpoint Sys. Inc.*, 269 F.3d at 296–297. "Conversely, in the absence of these factors, some initial confusion will not likely facilitate free riding on the goodwill of another mark, or otherwise harm the user claiming infringement. Where confusion has little or no meaningful effect in the marketplace, it is of little or no consequence" in the analysis of whether initial interest confusion is likely. *Id.* at 297. As explained below, the parties here are direct competitors selling interrelated products, which increases the likelihood of initial interest confusion.

SmartPak argues there is no confusion here because when consumers search the Internet for "Black-As Knight", "Gold-As-Sun" or "Red-D-Vinity", the links to Cheval's website and SmartPak's website appear separate and distinct. In support of this argument, SmartPak relies on *J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007), where the court in an initial interest confusion case granted the defendant's motion for summary judgment after finding no confusion due to the distinct links on the search result pages. *Wentworth* is clearly distinguishable, however, because the plaintiff did not allege the defendant's advertisements incorporated the plaintiff's marks "in any way discernable to internet users and potential customers." *Id.* at *7. In contrast, the entire genesis of the present lawsuit was SmartPak's display of Plaintiffs' actual marks on SmartPak's website where they clearly are discernable to consumers.

13

This Court's task is to decide if Plaintiffs have raised a genuine issue of material fact regarding whether SmartPak's behavior gives rise to source or initial interest confusion. The Court must first address how SmartPak's nominative use defense fits into the analysis.

### 2. Nominative Fair Use

Smartpak argues that it is entitled to summary judgment because the defense of nominative fair use applies in this case. Under the doctrine of nominative fair use, use of a mark that does not imply sponsorship or endorsement by the trademark holder may be permissible. *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 220 (3rd Cir. 2005). In *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir. 1995), the Second Circuit described the fair use doctrine:

> It is a fundamental principle marking an outer boundary of the trademark monopoly that, although trademark rights may be acquired in a word or image with descriptive qualities, the acquisition of such rights will not prevent others from using the word or image in good faith in its descriptive sense, and not as a trademark. The principle is of great importance because it protects the right of society at large to use words or images in their primary descriptive sense, as against the claims of a trademark owner to exclusivity.

*Id.* at 269 (internal citations omitted).

Citing a number of cases, SmartPak argues that the nominative fair use defense applies where 1) the product is not readily identifiable without use of the mark, 2) the defendant did not use more of the mark than was necessary, and 3) the defendant did not falsely suggest that it was sponsored or endorsed by the trademark holder. (Doc. 50 at 10.) In one of the cases cited by SmartPak, the Nebraska District Court noted that "[t]he Eighth Circuit has not discussed the doctrine," and that the approach suggested by the Ninth Circuit (which is the same test suggested by SmartPak) "has not been universally adopted." *Infogroup, Inc. v. DatabaseLLC*, 95 F.Supp.3d 1170, 1189 (D. Neb. 2015). The district court in *Infogroup* held that whether it applied the nominative fair use test suggested here by SmartPak or the "ordinary (if somewhat ill-fitting) rubric" set forth by the Eighth Circuit in traditional trademark infringement cases, the plaintiff failed to show a sufficient likelihood of confusion. *Id.* at 1190. The court's opinion in *Infogroup* demonstrates that it is unclear in the Eighth Circuit how to analyze the "likelihood of confusion" when a defense of nominative fair use

14

is asserted by the defendant. Thus the Court will turn to the Eighth Circuit's traditional test for likelihood of confusion.

### 3. Traditional Test for Likelihood of Confusion

In the Eighth Circuit, to determine whether a likelihood of confusion exists in a traditional trademark infringement case without a fair use defense, courts consider the following factors: (1) the strength of the trademark; (2) the similarity between the mark at issue and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent in using the mark; (5) incidents of actual confusion; and (6) whether the degree of purchaser care can eliminate the likelihood of confusion which would otherwise exist. *Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC*, 745 F.3d 877, 887-89 (8th Cir. 2014); *see also SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). These are sometimes referred to as the "*SquirtCo* factors." *Lovely Skin*, 745 F.3d at 888. The test is not mechanical, but rather focuses on the ultimate question of whether, under all the circumstances, consumers are likely to be confused between the plaintiff's trademark and the allegedly infringing use. *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 399 n.3 (8th Cir. 1987). "Under *SquirtCo*, no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Kemp v. Bumble Bee Seafoods, Inc.,* 398 F.3d 1049, 1054 (8th Cir. 2005). The flexibility of the *SquirtCo* factors is even more important in the present case which involves both an initial interest confusion claim and a nominative fair use defense - - issues not yet addressed by the Eighth Circuit.

For the following reasons, in considering the *SquirtCo* factors, the Court finds that Plaintiffs have presented sufficient evidence such that a reasonable jury may conclude that SmartPak's alleged infringement created a likelihood of customer confusion.

### a. Strength of the Mark

As discussed above, Plaintiffs' marks "Black-As-Knight", "Gold-As-Sun" and "Red-D-Vinity" are strong and distinctive. A customer searching for these terms is likely to be looking for Plaintiffs' products specifically and might be confused when the marks appears on a website where

15

the products are not available. Further confusion as to the origin of the product might result because SmartPak once sold the products. This factor favors Plaintiffs.

### b. Similarity of Marks and Degree the Products Compete

There is no dispute that SmartPak uses Plaintiffs' actual mark on the SmartPak website and thus the marks are identical. Moreover, there is no dispute that the two companies directly compete. Accordingly these two factors, the degree of similarity between the marks and the degree the products compete, weigh in favor of Plaintiffs. *See, e.g., North American Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1222–23 (11th Cir. 2008) (advertisers created likelihood of confusion by using competitors Web address and trademarks in their own advertisements on the Internet).

### c. Intent to "Pass Off"

SmartPak contends that it uses Plaintiffs' marks merely to indicate that it no longer carries the products, and that it has no intent to confuse customers about the source or availability of the products. SmartPak points out that Plaintiffs' own website shows up during Internet searches of the marks, and customers can easily access that and find out the products are still available. Plaintiffs note that Smartpak continues to use the names of Plaintiffs' products on its website despite being told that customers are confused about whether Cheval is still in business and if the products are available. This weighs slightly in favor of finding a likelihood of confusion. SmartPak's statement on its website that Plaintiffs' products are no longer available but they have another similar product also tips this factor in Plaintiffs' favor.

### d. Incidents of Actual Confusion

Plaintiffs present evidence of actual confusion by way of Anderson's sworn Affidavit:

> Prior to Plaintiffs' Complaint being filed, SmartPak's webpage stated "Black-As-Knight was no longer available. SmartPak's website had similar statements for all of Black-As-Knight, Gold-As-Sun, Inside-Out and Red-D-Vinity that the product was no longer available. These statements created actual confusion among customers. I was contacted on numerous occasions by consumers who thought Cheval International was out of business or no longer selling these products.

16

(Doc. 33 at ¶ 14.)

The Eighth Circuit has stated that testimony as to alleged confusion of third persons as provided in the statement above is one of the most unsatisfactory kinds because it is capable of such varying inferences. *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 193 (8th Cir. 1982) (citing *Flintkote Co. v. Tizer*, 158 F.Supp. 699, 702 (E.D. Pa. 1957)). As in *Vitek Systems*, the Court finds that Anderson's statement regarding purported customer confusion is hearsay and is entitled to little weight. The Court notes, however, that actual confusion, although proof positive of likelihood of confusion, is not necessary for a finding of trademark infringement. *See Squirtco*, 628 F.2d at 1091.

### e. Degree of Purchaser Care

There is no evidence in the record of the degree of purchaser case. The Court notes, however, that the use of the actual marks can confuse even the most sophisticated customer. *See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 652 F.Supp. 1105, 1113 (S.D.N.Y. 1987) ("[E]ven a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when the marks and products are nearly identical."), *aff'd*, 830 F.2d 1217 (2d Cir. 1987). The evidence shows that SmartPak uses Plaintiffs' actual marks on its website which might confuse even the most careful purchaser.

When these factors are weighed, they indicate that there is enough evidence for a jury to find a likelihood of confusion. Although there is little evidence of actual confusion, there is substantial evidence that SmartPak uses Plaintiffs' exact mark and, thus, consumers might be initially confused about the source of the product.

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes questions of material fact exist as to whether SmartPak infringed on Plaintiffs' trademarks, and that a reasonable jury could find that any such infringement had the likelihood of causing confusion. Accordingly, the Court will deny SmartPak's motion for summary judgment as to this claim on the marks "Black-As-Knight", "Gold-As-Sun," and "Red-D-Vinity".

17

**Count 2 - - Unfair Competition**

To establish a claim for either trademark infringement or unfair competition, a plaintiff must prove ownership of a valid trademark and the likelihood of confusion. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001) (noting that proof of protectable mark and defendant's use of the mark likely to cause confusion among consumers is required for both trademark infringement and unfair competition); *see also Steak n Shake Co. v. Burger King Corp.*, 323 F.Supp.2d 983, 991 (E.D.Mo. 2004). The same facts which support trademark infringement will also support a claim for federal unfair competition. *Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc.*, 758 F.Supp. 512, 527 (E.D.Mo. 1991).

The Court's grant of summary judgment to SmartPak as to the use of "Inside-Out" and "Bug-Off" necessitates summary judgment on the unfair competition claim as well. At the same time, the Court's denial of summary judgment based on the issue of likelihood of confusion regarding "Black-As-Knight", "Gold-As-Sun", and "Red-D-Vinity" necessitates denial of summary judgment on the unfair competition claim for those marks.

**Count 3 - - False Description under 15 U.S.C. § 1125**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), contains two prohibitions with respect to goods or services, a prohibition of false designations of origin and a prohibition of false descriptions or representations. In order to prove a claim under Section 43(a), 15 U.S.C. § 1125(a), for false designation of origin and false description, a plaintiff must show (1) that its trademark may be protected and (2) that the relevant group of buyers is likely to confuse the defendant's products or services with those of the plaintiff. *See Forum Corp. of North America v. Forum Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990). In the case at hand, the Court has found Plaintiffs' marks "Black-As-Knight", "Gold-As-Sun", and "Red-D-Vinity" strong and distinctive. The marks used on SmartPak's website are identical to these marks. As discussed above, the parties' products are closely related, and the parties are in direct competition. In considering all of the factors, this Court found a question

18

of fact as to likelihood of confusion. SmartPak, therefore, is not entitled to summary judgment on Plaintiffs' claim under Section 43(a), 15 U.S.C. § 1125(a), for false description in regard to the marks "Black-As-Knight", "Gold-As-Sun" and "Red-D-Vinity".

## Count 4 - State Claims for Defamation, Deceptive Trade Practices and Tortious Interference

As an initial matter, SmartPak claims entitlement to summary judgment on Plaintiffs' state law claims in part because Plaintiffs have not shown the specific injuries or damages suffered as a result of the alleged torts. Considering that former counsel for Plaintiffs desired discovery on this issue prior to a ruling on the motion for summary judgment and that no discovery has been done, Plaintiffs' failure to provide a computation of damages is not sufficient to support summary judgment at this time.[2] Therefore, the Court declines to enter summary judgment based on Plaintiffs' failure to provide specific damages information. When Plaintiffs retain a lawyer within thirty days from the date of this Order as agreed to by the parties, the lawyer can assist Plaintiffs in gathering specific evidence for computation of Plaintiffs' alleged damages for each claim. SmartPak may file a new motion for summary judgment on the state law claims if Plaintiffs fail to produce evidence of damages.

### A. South Dakota Deceptive Trade Practices Claim

In their Complaint, Plaintiffs allege that they are entitled to recover damages sustained as a result of false and misleading statements made by SmartPak indicating that certain of Plaintiffs' products are no longer available, statements which Plaintiffs allege "created confusion among

---

[2]Specifically, counsel for Plaintiffs requested discovery on:

Evidence of the diversion of internet traffic to SmartPak's website through the use of Plaintiffs' trademarks. Based on information and belief, SmartPak has records of the internet traffic to its webpages and can track the number of consumers that visited each particular webpage. Further, based on information and belief, SmartPak has records of the results of its internet advertising campaigns, such as Google AdWords. (Doc. 29 at ¶ 5.)

consumers," making "consumers believe that Plaintiffs were out of business or no longer selling their products." (Doc. 1 at ¶¶ 105, 106.)

> Under SDCL § 37-24-6(1), it is a deceptive act or practice for any person to:
>
> Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby;

SDCL § 37-24-6(1). This statute is a criminal proscription and Plaintiffs' civil action is governed by SDCL § 37-24-31, which specifically requires a causal connection between the alleged violation and the damages suffered:

> Any person who claims to have been adversely affected by any act or a practice declared to be unlawful by 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice.

*Nygaard v. Sioux Valley Hosp. & Health Sys.,* 731 N.W.2d 184, 196 (S.D. 2007) (quoting SDCL § 37-24-31).

In its brief in support of its motion for summary judgment, SmartPak pointed out that to recover in an action under the South Dakota Deceptive Trade Practices Act, a plaintiff must have relied on the alleged misrepresentation. *See generally Nygaard*, 731 N.W.2d at 184 (action dismissed when plaintiff patients failed to allege their beliefs caused them to select hospitals making alleged misrepresentations). *See also Nw. Pub. Serv., a Div. of Nw. Corp. v. Union Carbide Corp.,* 236 F. Supp.2d 966, 973-74 (D.S.D. 2002) (claim under SDCL § 37-24-6 "requires proof of an intentional misrepresentation or concealment of a fact on which plaintiff relied and that caused an injury to plaintiff"). Plaintiffs' Complaint alleges that consumers, not Plaintiffs, relied on the alleged misrepresentations.

After receiving SmartPak's brief, Plaintiffs asserted in their responsive brief that they were referring to misrepresentations made to them rather than to consumers, as described in the Affidavit of August Anderson:

20

Paal Gisholt of SmartPak informed me via email dated December 19, 2012, that SmartPak was no longer advertising Plaintiffs' products with the exception of Gold as Sun which would cease after SmartPak had sold its inventory of the product. A true and correct copy of the email is attached hereto as Exhibit 1.

The statements by Paal Gisholt of SmartPak in his emails dated December 18, 2012, and December 19, 2012, and attached hereto as Exhibit 1, led me to believe that SmartPak would correct the false and misleading statements on its website, on internet search engines, and in published materials and would stop infringing on my trademarks and Cheval's trademarks. I relied on these statements by Paal Gisholt and did not take immediate action to correct the false statements and trademark infringement. My reliance on Paal Gisholts' statements has injured me and Cheval.

(Doc. 33 ¶¶ 1, 2.)

Even accepting Plaintiffs' allegations in their brief and Anderson's affidavit, there is no evidence that Plaintiffs relied on SmartPak's representations as defined by the South Dakota Deceptive Trade Practices Act. The language of the statute requires a misrepresentation in connection with the sale or advertisement of merchandise. The email from Paal Gisholt was not an advertisement and he was not selling products to Plaintiffs. Plaintiffs have failed to produce evidence of reliance on misrepresentations in connection with the sale or advertisement of merchandise, and have not established the requisite causal connection imposed by SDCL § 37–24–31. Defendants are therefore entitled to summary judgment on Plaintiffs' cause of action under the South Dakota Deceptive Trade Practices Act.

### B. Defamation

According to Plaintiffs, SmartPak "intentionally, unjustifiably, and maliciously displayed the statement 'product No Longer Available - SmartPak Equine' in an attempt to make consumers believe that Plaintiffs were out of business or no longer selling their products. This statement is false and unprivileged. It has damaged Plaintiffs in their occupation." (Doc. 32 at 14.)

Under South Dakota law, libel and slander are the two classes of defamation. *See* SDCL § 20-11-2. ("Defamation is effected by: (1) Libel; or (2) Slander."). Libel is defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye

21

which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." SDCL § 20-11-3. Slander is defined under South Dakota law as follows:

> Slander is a false and unprivileged publication, other than libel, which:
>
> (1) Charges any person with crime, or with having been indicted, convicted, or punished for crime;
>
> (2) Imputes to him the present existence of an infectious, contagious, or loathsome disease;
>
> (3) Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;
>
> (4) Imputes to him impotence or want of chastity; or
>
> (5) By natural consequence, causes actual damage.

SDCL § 20-11-4.

SmartPak first argues that the statement is not false because it is true that Plaintiffs' products are no longer available from SmartPak. Next, SmartPak contends that, even if it is a false statement, there is no evidence that it injured Plaintiffs' reputations or caused damages. The Court finds that even if it is true that Plaintiffs' products are no longer available from SmartPak, the statement could create an implication that the products are no longer available from anywhere, which is false. As to SmartPak's second contention, an implication that Plaintiffs' products are no longer available has a tendency to injure Plaintiffs in their occupation, lessen Plaintiffs' profits or, by natural consequence, cause actual damage to Plaintiffs.

Based on the above questions of material fact, SmartPak's motion for summary judgment with respect to Plaintiffs' defamation claim will be denied.

22

C. Tortious Interference with Business Expectancy

The elements necessary to prove tortious interference with business relationships or expectancy as established by South Dakota law are: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted. *Hayes v. Northern Hills General Hosp.*, 590 N.W.2d 243, 248 (S.D. 1999).

Plaintiffs assert that SmartPak intended to cause harm by the statements about product unavailability, that SmartPak had knowledge regarding the falsity of its statements, and that such statements caused confusion among consumers and affected Plaintiffs' sales of the product. There are some facts in the record to support these allegations when the evidence is viewed in a light most favorably to Plaintiffs. Accepting as true the evidence presented by the nonmoving party, one can conclude that SmartPak intended to cause harm by its statements, that it knew its statements were false because Plaintiffs' products had not been discontinued and were available elsewhere, and that its statements caused customer confusion. Viewing the evidence in the light most favorable to Plaintiffs, the facts are disputed as to whether SmartPak did in fact interfere with existing business relations and whether that interference extended to any prospective business relations between Plaintiffs and their customers. The Court therefore will deny summary judgment on the claim of tortious interference with business relationships or expectancy.

**Counts 5 and 6 -- State Claims for Unfair Competition and Trademark Infringement**

Counts 5 and 6 of Plaintiffs' Complaint essentially contain the same allegations as those asserted in Plaintiffs' federal claims for Trademark Infringement and Unfair Competition. As with the federal claims, in Counts 5 and 6 Plaintiffs must provide evidence demonstrating that SmartPak's alleged infringement is likely to create confusion among consumers as to the source of the product. *Gateway, Inc. v. Companion Prods., Inc.*, 320 F.Supp.2d 912, 924 (D.S.D. 2002) (citing *Phipps Bros., Inc. v. Nelson's Oil & Gas, Inc.*, 508 N.W.2d 885, 886 n.2 (S.D. 1993)) ("In South Dakota,

23

the federal 'likelihood of confusion' test is applied to trademark infringement actions brought under state common law.").

The Court finds that as with Plaintiffs' federal claims for trademark infringement and unfair competition, SmartPak is not entitled to summary judgment on Plaintiffs' state law unfair competition and trademark claims as to the marks "Black-As-Knight", "Gold-As-Sun" and "Red-D-Vinity." Plaintiffs have raised a question of fact whether the alleged infringement by SmartPak is likely to cause confusion among consumers of the products.

For the foregoing reasons, it is

ORDERED:

(1)    SmartPak's Motion for Summary Judgment is granted as to the marks "Bug-Off" and "Inside-Out" on all counts of the Complaint.

(2)    SmartPak's Motion for Summary Judgment is also granted on the Deceptive Trade Practices claim alleged in Court 4 of the Complaint.

(3)    SmartPak's Motion for Summary Judgment is otherwise denied.

Dated this 15th day of March, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
DEPUTY

24